UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PAUL A. ACQUISTO,

                    Plaintiff,

vs.                                    Case No.  2:08-cv-847-FtM-29DNF

SECURE HORIZONS by United Healthcare
Insurance Company,

                    Defendants.
_____


**<u>OPINION AND ORDER</u>**

This matter comes before the Court on Defendant's Motion to
Dismiss Third Amended Complaint (Doc. #91), to which plaintiff
filed a Reply (Doc. #93).  This case arises out of defendant's
unilateral change in some of the co-payments required by its
insureds under a Medicare plan, which resulted in $5.00 in actual
damages to plaintiff.  While defendant asserts it has already
reimbursed the $5.00, plaintiff maintains that he has not received
it.  To remedy the situation, plaintiff, proceeding *pro se*, has
filed a seven-count Third Amended Complaint.  For the reasons set
forth below, the motion is granted and the Third Amended Complaint
is dismissed without prejudice.

**I.**

Plaintiff alleges the following material facts in the Third
Amended Complaint, which for purposes of the motion, the Court
assumes to be factually correct:

Plaintiff Paul Acquisto (plaintiff or Acquisto) is an elderly, retired State of Florida employee who was an enrollee in defendant United HealthCare Insurance Company's (defendant or UHC) Secure Horizons health plan. (Doc. #90, ¶¶2, 11.) UHC is a private organization which sponsors Medicare Advantage[1] plans, such as the Secure Horizons plan. (Id., ¶¶3, 12.) The Secretary of Health and Human Services, through the Centers for Medicaid & Medicare Services (CMS), contracted with UHC to provide health services as a Medicare Advantage Plan (MAP) to enrollees like plaintiff. (Id., ¶12.)[2]

In December 2006, plaintiff enrolled in UHC's 2007 Medicare Complete Choice Plan 2, R5287-001, commencing January 1, 2007 and

---

[1]Medicare Part C was originally known as Medicare+Choice, but it was subsequently replaced by the current program, which is called Medicare Advantage. See Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, § 201, 117 Stat. 2066, 2176.

[2]The Eleventh Circuit has stated that Medicare is "a social-security program that provides federally-subsidized health insurance and is administered by the Department of Health and Human Services through the Centers for Medicare and Medicaid Services. The benefits available under Medicare are prescribed by law and divided into four 'parts.' Part A provides hospital, skilled nursing, home health, and hospice care benefits. Part B provides physician and other outpatient services. Part D provides outpatient prescription drug benefits. The traditional Medicare structure allows beneficiaries access to Parts A, B, and D as separate benefits. Part C provides beneficiaries with an option to instead obtain the benefits available under Parts A and B as well as some additional benefits through a health insurance plan, known as a "Medicare Advantage Plan," administered by a private company." Dial v. Healthspring of Ala., Inc., 541 F.3d 1044, 1046 (11th Cir. 2008).

ending December 31, 2007.  (Id., ¶15.)  Plaintiff paid premiums of
$93.50 per month to UHC.  (Id., ¶11.)  Later in December 2006,
plaintiff received defendant's 2007 Individual Summary of Benefits
booklet (the Summary booklet), which identified the amount of the
co-payments to be paid by plaintiff for various services offered
under the plan.  (Id., ¶16; Doc. #90-1.)  In January 2007,
plaintiff received an Individual Evidence of Coverage booklet (the
EOC booklet) which stated in part that UHC could not reduce
benefits during the calendar year.  (Id., ¶¶17, 18.)

On February 20, 2007, plaintiff received lab service from
Laboratory Corporation of America (LabCorp).  The Summary booklet
stated that "copayment for lab service is 0% of the cost".  (Id.,
¶20.)  Plaintiff paid no co-payment at the time the service was
rendered.

On or about February 27, 2007, plaintiff received a letter
from UHC which stated that the Summary booklet "contained incorrect
information regarding certain benefits" and "[w]e are writing to
notify you about the errors and to provide the correct
information."  This letter identified, *inter alia*, the co-payment
for lab service as one of the errors in the Summary booklet, and
stated that the actual co-payment was $5.00.  (Id., ¶22; Doc. #90-
1, pp. 5-7.)

On March 5, 2007, plaintiff sent CMS (with a copy to UHC) a
letter complaining that the change in co-payments by UHC was

arbitrary and unjustified, and should not have been approved by Medicare. Plaintiff labeled this letter a "Complaint/Appeal" and sought to reverse Medicare's approval of the co-payment increases. (Id., ¶23; Doc. #90-1, p. 8.)

On April 26, 2007, LabCorp sent plaintiff an invoice for a $5.00 co-payment. (Id., ¶¶20, 21.)

On May 4, 2007, plaintiff sent UHC's Grievance Supervisor a letter in which he complained about the February, 2007, increases in co-payments in general and about his LabCorp co-payment for services received on February 20, 2007, in particular. Plaintiff objected to the increases as untimely, arbitrary, and unjustified; complained that the increase in co-payments was retroactive as to the LabCorp service; and stated that there should be no co-payments charged even after February, 2007, because UHC had a contract for a year which could not be unilaterally changed. (Id., ¶25; Doc. #90-1, p. 14.)

On or about May 9, 2007, plaintiff paid the $5.00 LabCorp invoice. (Id., ¶20).

In May 2007, plaintiff received another letter from defendant, which stated in part: "Unfortunately, the Schedule of Benefits was printed and mailed with incorrect information for certain benefits. We are writing to notify you about the errors and to provide the correct information." (Id., ¶24; Doc. #90-1, pp. 9-13.) None of the incorrect information referred to in this second letter related

to the lab service co-payments. Plaintiff asserts, however, that the errors constituted improper "changes" to the Schedule of Benefits. (Id., ¶24.)

Defendant treated plaintiff's complaints as raising two distinct issues, and responded in two letters dated June 1, 2007. (Id., ¶27; Doc. #90-1, pp. 16-17.) The first letter addressed the February 20, 2007 service by LabCorp, stating that there was a printing error in the Summary booklet, which should have reflected a $5.00 copayment. Defendant stated that since the laboratory service was rendered prior to plaintiff's notification of the error, UHC would waive the copayment for the lab service he received on February 20, 2007.[3] (Id.) Plaintiff was told to allow 2-3 weeks for payment. (Id.) Plaintiff alleges he never received the refund of his $5.00. (Id., ¶30.)

UHC's second June 1, 2007, letter addressed plaintiff's general objections to the increase in co-payments. This letter made reference to the printing errors, and stated that defendant would waive co-payments for all services plaintiff received prior to the February 27, 2007, notification. Defendant declined, however, to waive future co-payments that occurred after plaintiff received notification of the printing error. (Id., ¶27.)

---

[3]In its motion, defendant asserts that it waived the co-payments for all enrollees for applicable services rendered prior to February 27, 2007 - the date of the notification letter. (Doc. #91-3, p. 3.)

In a June 5, 2007, letter from plaintiff to UHC's grievance coordinator, plaintiff continued to take the position that UHC's unilateral changes to the contract raised questions about the validity of the co-payments for the balance of the year. (Id., ¶29.)

On September 4, 2007, plaintiff sent another letter to UHC's appeals and grievance department, asserting that he was "filing a grievance/appeal/complaint regarding the copay on the above-mentioned service by LabCorp." Plaintiff stated that the Summary booklet indicated no co-payment for this service, and that he was therefore filing for reconsideration. Plaintiff stated that defendant had breached their contract by unilaterally changing the Summary booklet's co-payment provisions. (Id., ¶32.)

In an October 5, 2007, letter to defendant's Grievance Coordinator, plaintiff questioned the failure to forward his complaints to Maximus, the independent entity for review of organizational determinations. Plaintiff asserted that this was denying his right to appeal defendant's imposition of co-payments for services such as lab work. (Id., ¶33; Doc. #90-1, p. 22.)

In a January 10, 2008, letter, defendant responded that plaintiff's complaint letters relating generally to the changes in co-payments were handled through the Medicare grievance process, and that grievances are not subject to the appeal process and do not have another level of review. The letter also stated that

plaintiff's appeal regarding his lab co-payment was being addressed under separate cover.  (Id., ¶34.)  Plaintiff did not, however, refer to or attach any additional correspondence to his complaint.

## II.

Defendant seeks to dismiss the Third Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56[4].  Defendant argues that the Third Amended Complaint fails to state a claim upon which relief may be granted and that the court lacks subject matter jurisdiction over plaintiff's claims. (Doc. #91, p. 1.)  Additionally, defendant argues that Counts I-IV are preempted by 42 U.S.C. § 1395w-26(b)(3), which requires plaintiff to exhaust his administrative remedies before commencing court action, and that the requisite jurisdictional amount of 42 U.S.C. § 1395w-22(g)(5) cannot be satisfied.  (Doc. #1, p. 2.)

## A.  Subject Matter Jurisdiction

The general subject matter jurisdiction principles are easily summarized.  "Federal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute, [ ] which is not to be expanded by judicial decree [ ]. It is to be presumed that a cause lies outside this limited

---

[4]Rule 56 relates to motions for summary judgments, and the Court declines to convert defendant's motion to dismiss into a motion for summary judgment.  Therefore, no relief will be premised upon Rule 56.

jurisdiction [ ], and the burden of establishing the contrary rests upon the party asserting jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)(internal citations omitted). Here, it is plaintiff's burden to establish jurisdiction.

Article III, Section 1, of the United States Constitution vests judicial power in the Supreme Court and such inferior courts as Congress may establish. Article III, Section 2, of the United States Constitution extends judicial power to "all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties, . . ." Congress has provided that federal courts generally have subject matter jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Third Amended Complaint relies upon this jurisdictional basis, as well as 42 U.S.C. § 1395. (Doc. #90, ¶¶5-7).

Congress is not required, however, to give federal courts all the jurisdiction authorized by Article III. Palmore v. United States, 411 U.S. 389, 400-01 (1973). Congress may grant jurisdiction to federal courts, but may also restrict or divest the federal courts of jurisdiction. See, e.g., Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471 (1999); Rockwell Int'l Corp. v. United States, 549 U.S. 457 (2007); Kucana v. Holder, 130 S. Ct. 827 (2010).

While there is a strong presumption that Congress intends judicial review of administrative action, the presumption may be overcome. <u>Bowen v. Mich. Acad. of Family Physicians</u>, 476 U.S. 667, 670-73 (1986). The Supreme Court has found that judicial review under the federal-question statute, 28 U.S.C. § 1331, is precluded by 42 U.S.C. § 405(h), applicable to the Medicare Act by operation of § 1395ii. <u>Weinberger v. Salfi</u>, 422 U.S. 749, 760-61 (1975); <u>Heckler v. Ringer</u>, 466 U.S. 602, 614-15 (1984); <u>Your Home Visiting Nurse Servs., Inc. v. Shalala</u>, 525 U.S. 449, 456 (1999). Thus,

> [t]he Medicare statute requires that any lawsuit which seeks "to recover on any claim arising under" it must first be brought through the Department of Health and Human Services' administrative appeals process before it can be taken to federal court. See 42 U.S.C. § 1395ii (adopting the Social Security statute 42 U.S.C. § 405(h), which strips federal courts of primary federal-question subject matter jurisdiction over Medicare claims); 42 U.S.C. § 1395ff(b)(1) (adopting the Social Security statute 42 U.S.C. § 405(g), which confers on federal courts the jurisdiction to hear Medicare claims after administrative review has been exhausted).

<u>Cochran v. U.S. Health Care Fin. Admin.</u>, 291 F.3d 775, 778-79 (11th Cir. 2002); <u>see also</u> <u>United States v. Blue Cross & Blue Shield of Ala., Inc.</u>, 156 F.3d 1098, 1102 (11th Cir. 1998)(finding that the third sentence of 42 U.S.C. § 405(h)[5] removes

---

[5]Section 405(h) provides: "The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof
(continued...)

federal-question jurisdiction in the district courts under 28 U.S.C. § 1331 over all cases "arising under" the Medicare Act).

If § 405(h) bars federal question jurisdiction, a person "must proceed instead through the special review channel that the Medicare statutes create." Shalala v. Ill. Council on Long Term Care, Inc., 529 U.S. 1, 5 (2000); see also Dial, 541 F.3d at 1047-48. The third sentence of § 405(h)

> is intended to prevent circumvention of the
> administrative process provided for the adjudication of
> disputes between Medicare beneficiaries and the
> government (or agents of the government such as fiscal
> intermediaries). The provision takes away general
> federal-question jurisdiction over claims by Medicare
> beneficiaries, forcing them to pursue their claims in a
> hearing under subsection 405(b) and then, if necessary,
> in an appeal under the specific grant of jurisdiction
> contained in subsection 405(g). Thus, the third sentence
> is the final piece in an administrative scheme designed
> to give the administrative process the first opportunity
> to resolve disputes over eligibility or the amount of
> benefits awarded under the Act.

Blue Cross, 156 F.3d at 1103-04 (footnotes omitted). "Until a claimant has exhausted her administrative remedies by going through the agency appeals process, a federal district court has no subject matter jurisdiction over her lawsuit seeking to 'recover on any claim arising out of' the Medicare Act." Cochran, 291 F.3d at 779.

Even after compliance with the administrative procedures, the availability of judicial review is more restrictive than otherwise

---

⁵(...continued)
shall be brought under section 1331 or 1346 of Title 28 to recover
on any claim arising under this subchapter."

under § 1331.  There must be a final decision by the Secretary and satisfaction of a minimum amount in controversy requirement before commencing a civil action in federal district court under 42 U.S.C. § 405(g).  Dial, 541 F.3d at 1047-48; see also Ringer, 466 U.S. at 615 (This procedure for judicial review is "to the exclusion of 28 U.S.C. § 1331" and is the "sole avenue for judicial review for all" claims arising under the Medicare Act.); Giesse v. Sec'y of Dept. of Health & Human Servs., 522 F.3d 697, 702 (6th Cir. 2008)("Aside from this administrative review process, the Medicare Act bars judicial review of claims that 'arise under' the Act.").

Thus, there are three relevant jurisdictional issues: (1) does the claim arise under the Medicare Act; (2) if so, has the claim been administratively exhausted; and (3) if so, is judicial review then available.  The Court addresses each.

**(1) Claim Arising Under Medicare Act:**

The threshold question is whether plaintiff's claims "arise under" the Medicare Act and are therefore subject to administrative exhaustion.  A claim "arises under" the Medicare Act if the Act provides both the "standing and the substantive basis for the presentation" of plaintiff's claims.  Salfi, 422 U.S. at 761; Ringer, 466 U.S. at 615.  This broad test includes a claim for benefits, Illinois Council on Long Term Care, 529 U.S. at 8[6];

_____

[6]"[The language of § 405] clearly appl[ies] in a typical Social Security or Medicare benefits case, where an individual
(continued...)

<u>Giesse</u>, 522 F.3d at 702, a claim which is inextricably intertwined with a claim for benefits, <u>Ringer</u>, 466 U.S. at 614, 620, a claim which is "essentially one requesting the payment of benefits," <u>Ringer</u>, 466 U.S. at 614, 620, a claim for the return of premiums, <u>Do Sung Uhm v. Humana, Inc.</u>, 620 F.3d 1134, 1141-42 (9th Cir. 2010), and constitutional or statutory claims[7] which cannot be resolved administratively, but nevertheless must be channeled through the administrative process, <u>Lifestar Ambulance Serv., Inc. v. United States</u>, 365 F.3d 1293 (11th Cir. 2004).

In Count I, the Second Amended Complaint alleges a breach of contract occurred when defendant unilaterally altered benefits by increasing the co-payments pursuant to its February, 2007 letter. Count II alleges that defendant breached the contract by unilaterally increasing the co-payments in its May, 2007 letter. The Court finds that both of these counts clearly state claims

---

[6](...continued)
seeks a monetary benefit from the agency (say, a disability payment, or payment for some medical procedure), the agency denies the benefit, and the individual challenges the lawfulness of that denial. The statute plainly bars § 1331 review in such a case, irrespective of whether the individual challenges the agency's denial on evidentiary, rule-related, statutory, constitutional, or other legal grounds." <u>Shalala v. Ill. Council on Long Term Care</u>, 529 U.S. 1, 10 (2000).

[7]"Subsection 405(h) prevents beneficiaries and potential beneficiaries from evading administrative review by creatively styling their benefits and eligibility claims as constitutional or statutory challenges to Medicare statutes and regulations." <u>Blue Cross</u>, 156 F.3d at 1104.

which "arise under" the Medicare Act, and therefore require exhaustion of administrative remedies.

In Count III, plaintiff alleges that defendant failed to comply with 42 U.S.C. § 1395w-22(g) and 42 C.F.R. § 422.590(2) and § 422.592 by failing to forward his appeal files to Maximus, the Medicare reviewing entity, for which plaintiff seeks monetary damages. In Count IV, plaintiff alleges that he was denied procedural due process and equal protection under the Fifth Amendment when defendant failed to forward his appeal files to Maximus, thus depriving him of the opportunity for an administrative review. These procedural claims are inextricably intertwined with plaintiff's claim for benefits and, therefore, arise under the Medicare Act. See, e.g., Ringer, 466 U.S. at 614 (finding that plaintiffs' due process challenge was inextricably intertwined with a benefits determination because it was "at bottom, a claim that they should be paid for their [] surgery" and as such arose under the Medicare Act); Shalala, 529 U.S. at 13 (This nearly absolute channeling requirement "assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by individual courts.").

In Count V, plaintiff alleges that defendant's breaches of the contract violated his rights to make and enforce contracts under 42 U.S.C. § 1981. Plaintiff argues that § 1981 is not limited to

claims based on race, but includes discrimination against the elderly. In Count VI, plaintiff alleges that defendant failed to remain in compliance with licensing requirements for 2007 and lost their MA credential, misrepresented the contract at enrollment as to the co-payments, and illicitly (because of the lack of a valid license for 2007) received enrollees' premiums and government funds. While these counts are arguably related to plaintiff's claim for benefits, they are not inextricably intertwined with the Medicare Act and the remedial scheme outlined by Congress.[8] Therefore, the Court finds that these counts do not arise under the Medicare statute. See <u>Ringer</u>, 466 U.S. at 618 (noting that where a claim is collateral to claim for benefits, it is not subject to 405(g)'s exhaustion of administrative remedies requirement).

In Count VII, plaintiff alleges that 42 U.S.C. §1395w-22(f) and 42 C.F.R. § 564 relating to the grievance process are unconstitutionally vague and ambiguous on their face and as applied. Plaintiff asserts that the definition of a "grievance" is too broad and permits MA organizations, like UHC, to classify nearly all claims by enrollees as grievances, thereby denying complainants any right to administrative[9] and judicial review.

---

[8]42 U.S.C. § 1395w-26(b)(3) provides that state licensing laws are not superseded by the Medicare Act.

[9]An enrollee has no right to appeal an adverse grievance determination. He or she may only appeal an adverse organizational determination. The MA Organization is the party who initially
(continued...)

Because this count challenges the validity of the Secretary's instructions and regulations, the Court finds that it does not arise under the Medicare Act.  See <u>Bowen</u>, 476 U.S. at 676.

**(2) Exhaustion of Administrative Procedures:**

Since Counts I-IV allege claims which arise under the Medicare Act, plaintiff was required to exhaust his administrative remedies. The administrative procedure an MA Organization uses to address an enrollee's claim depends on whether the claim is classified as a "grievance" or as an "organization determination."

An "organization determination" is defined as:

[A]ny determination made by an MA organization with respect to any of the following:

1) Payment for temporarily out of the area renal dialysis services, emergency services, post-stabilization care, or urgently needed services.

(2) Payment for any other health services furnished by a provider other than the MA organization that the enrollee believes--

(i) Are covered under Medicare; or

(ii) If not covered under Medicare, should have been furnished, arranged for, or reimbursed by the MA organization.

(3) The MA organization's refusal to provide or pay for services, in whole or in part, including the type or level of services, that the enrollee believes should be furnished or arranged for by the MA organization.

---

[9](...continued)
decides, whether a complaint is a "grievance" or an "organizational determination."

(4) Reduction, or premature discontinuation, of a previously authorized ongoing course of treatment.

(5) Failure of the MA organization to approve, furnish, arrange for, or provide payment for health care services in a timely manner, or to provide the enrollee with timely notice of an adverse determination, such that a delay would adversely affect the health of the enrollee.

42 C.F.R. 422.566(b).

If an enrollee disagrees with the "organization determination" of the MA Organization, the enrollee can request that the MA Organization reconsider its decision. 42 U.S.C. § 1395w-22(g)(2); 42 C.F.R. § 422.578. If the MA Organization does not reverse its earlier adverse decision, it must send the case to an outside health dispute resolution agency, such as Maximus, for independent review. 42 U.S.C. § 1395w-22(g)(4); 42 C.F.R. § 422.592. If the outside reviewing agency upholds the MA Organization's determination, and the amount in controversy is at least $100 (or more as increased by statute)[10], the enrollee may request a hearing before an ALJ. 42 U.S.C. § 1395w-22(g)(5); 42 C.F.R. § 422.600(a). If the enrollee disagrees with the decision of the ALJ, he may request that the Medicare Appeals Council (MAC) review the case. 42 C.F.R. § 422.608. The enrollee may then seek judicial review of the MAC's decision, or may seek judicial review of the ALJ's decision if the MAC declines to review the ALJ's decision. 42 U.S.C. § 1395w-22(g)(5); 42 C.F.R. § 422.612. Judicial review is

_____

[10]See 42 U.S.C. § 1395w-22(g)(5); 42 U.S.C. § 1395ff(b)(E)(iii).

available only if plaintiff's claim involves an amount above the statutory minimum, which is at least $1,000. 42 U.S.C. § 1395w-22(g)(5).

Thus, to obtain judicial review an enrollee's claim must first be classified as an "organization determination" and then it must proceed through the administrative process outlined above. Only if the Secretary renders a "final decision" and the amount in controversy requirement is met, can a court review the enrollee's claim.

Grievances, unlike organization determinations, do not have additional levels of review beyond the MA organization. 42 U.S.C. § 1395w-22(f); 42 C.F.R. §§ 422.562(b), 422.564(b). As there are no additional levels of review beyond the MA organization, there is no "final decision" by the Secretary. Giesse, 522 F.3d at 703-04. A "grievance" is defined as:

> [A]ny complaint or dispute, other than one that constitutes an organization determination, expressing dissatisfaction with any aspect of an MA organization's or provider's operations, activities, or behavior, regardless of whether remedial action is requested. 42 C.F.R. § 422.561.

Here, UHC classified plaintiff's claims as grievances, not organization determinations. Based upon the remedial scheme outlined by Congress and the Secretary's regulations, plaintiff was not entitled to any additional review of his claims. Ultimately, however, UHC's classification of plaintiff's claim had no effect on his ability to obtain judicial review. As set forth below, even if

UHC had classified plaintiff's claims as "organization determinations" and plaintiff exhausted the administrative procedures set forth above, plaintiff would not have met the amount in controversy requirement necessary to obtain judicial review.

**(3) Final Decision and Jurisdictional Amount:**

The Medicare Act's grant of subject matter jurisdiction only permits judicial review of "the final decision of [the Secretary] made after a hearing" and when the amount-in-controversy exceeds $1000. 42 U.S.C. § 405(g); 42 U.S.C. § 1395w-22(g)(5). Here, plaintiff could not obtain a "final decision" because his claims were classified as a grievances. However, even if they were classified as organization determinations, plaintiff's claims could not have been presented to the Secretary because the amount in controversy did not entitle him to a hearing. 42 U.S.C. § 1395ff(E)(i) provides:

> A hearing (by the Secretary) shall not be available to an individual under this section if the amount in controversy is less than $100, and judicial review shall not be available to the individual if the amount in controversy is less than $1,000.[11]

Plaintiff challenged a $5.00 co-pay, which did not meet the prerequisite amount for presentment and subsequent judicial review. Accordingly, the Court is deprived of subject matter jurisdiction

---

[11]These amounts are increased periodically by statute. See 42 U.S.C. § 1395w-22(g)(5); 42 U.S.C. § 1395ff(b)(E)(iii).

with respect to Counts I-IV.  These counts are dismissed without prejudice.

## B.  Failure to State a Claim

The Court has jurisdiction of the remaining claims, Counts V-VII, pursuant 28 U.S.C. § 1331 and 28 U.S.C. § 1367.  Defendant seeks dismissal of these counts for failure to state a claim.  In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Erickson v. Pardus, 551 U.S. 89 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002).  "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)).  The former rule -- that "[a] complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief," La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) -- has been retired by Twombly.  James River Ins. Co., 540 F.3d at 1274.  Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly

give rise to an entitlement to relief." <u>Ashcroft v. Iqbal</u>, 129 S.
Ct. 1937, 1950 (2009). Dismissal is warranted under Fed. R. Civ.
P. 12(b)(6) if, assuming the truth of the factual allegations of
plaintiff's complaint, there is a dispositive legal issue which
precludes relief. <u>Neitzke v. Williams</u>, 490 U.S. 319, 326 (1989);
<u>Brown v. Crawford Cnty.</u>, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

The Court must limit its consideration to well-pleaded factual
allegations, documents central to or referenced in the complaint,
and matters judicially noticed. <u>La Grasta v. First Union Sec.,
Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004). The Court may consider
documents which are central to plaintiff's claim whose authenticity
is not challenged, whether the document is physically attached to
the complaint or not, without converting the motion into one for
summary judgment. <u>Day v. Taylor</u>, 400 F.3d 1272, 1276 (11th Cir.
2005); <u>Maxcess, Inc. v. Lucent Techs.</u>, Inc., 433 F.3d 1337, 1340
n.3 (11th Cir. 2005).

Because plaintiff is proceeding *pro se*, his pleadings are held
to a less stringent standard than pleadings drafted by an attorney
and will be liberally construed. <u>Hughes v. Lott</u>, 350 F.3d 1157,
1160 (11th Cir. 2003).

**(1)  Count V: Violation of 42 U.S.C. § 1981:**

Plaintiff contends that pursuant to § 1981 "the law. . .
protects the elderly Plaintiff/enrollees from discrimination and
deprivation and does permit the Plaintiff/ enrollees to have an un-

breached contract as other Medicare Advantage Plans or other Secure Horizons Plan enrollees." The Court disagrees.

Section 1981 protects against racial discrimination. The statute is a "prohibition against racial discrimination in the making and enforcement of contracts" and in the conduct of the contractual relationship. Rivers v. Roadway Express, Inc., 511 U.S. 298, 302 (1994). The Third Amended Complaint makes no allegation of intentional discrimination based upon racial or ethnic discrimination. Therefore, Count V will be dismissed without prejudice.

**(2) Count VI: Illicit receipt of Medicare enrollees' premiums and government funds from Medicare:**

Plaintiff alleges "Secure Horizons illicitly received Medicare enrollees' premiums and government funds from medicare because it operated in 2007 as invalid Medicare Advantage plan provider." Plaintiff asserts that UHC failed to remain in compliance with the licensing requirement under 42. U.S.C. 1395w-25(a) and lost their Medicare Advantage credential in 2007. (Doc. #90, ¶62.) First, plaintiff has failed to allege any facts in support of this contention. Mere conclusory statements are insufficient. Iqbal, 129 S. Ct. at 1949. Second, plaintiff has failed to direct the Court to any statute which creates a private cause of action for violation of licensing requirements. Although courts generally construe *pro se* pleadings liberally, the Court will not "construct arguments or theories for the plaintiff in the absence of any

discussion of those issues." <u>Drake v. Fort Collins</u>, 927 F.2d 1156, 1159 (10th Cir. 1991). Accordingly, Count VI will be dismissed without prejudice.

### (3) Count VII: Constitutional challenge to 42 U.S.C. § 1395w-22(f) and 42 C.F.R. § 564:

In Count VII, plaintiff alleges that the regulations governing Medicare's grievance procedure are unconstitutionally vague and ambiguous and violate the Fifth Amendment's due process clause because they allow UHC to classify complaints as "grievances" and thereby prevent further review of an enrollee's claims.

Defendant does not challenge plaintiff's allegations, but instead relies on <u>Shalala v. Illinois Council on Long Term Care</u>, 529 U.S. 1 (2000) for the proposition that plaintiff's constitutional challenge must first be channeled through the administrative review process before a Court may consider it. Here, however, plaintiff has gone as far as the administrative process will allow him to go. He cannot channel his constitutional claim through the process outlined in section A.2 above because UHC has classified it as a grievance. The regulations themselves do not allow for any additional review beyond the MA Organization.

The Court will, therefore, consider whether plaintiff has stated a claim for violation of due process under the Fifth Amendment.

The Fifth Amendment "restrains the federal government. . . from depriving any person of life, liberty, or property without due

-22-

process of law." Buxton v. Plant City, Fla., 871 F.2d 1037, 1041

(11th Cir. 1989). "For more than a century the central meaning of

procedural due process has been clear: Parties whose rights are to

be affected are entitled to be heard; and in order that they may

enjoy that right they must first be notified. It is equally

fundamental that the right to notice and an opportunity to be heard

must be granted at a meaningful time and in a meaningful manner."

Hamdi v. Rumsfeld, 542 U.S. 507, 533 (2004)(citations and internals

quotation marks omitted); see also Goldberg v. Kelly, 397 U.S. 254

(1970)(collecting cases).

The Medicare regulations provide in relevant part:

(a) General rule. Each MA organization must provide
meaningful procedures for timely hearing and resolving
grievances between enrollees and the organization or any
other entity or individual through which the organization
provides health care services under any MA plan it
offers.

(b) Distinguished from appeals. Grievance procedures are
separate and distinct from appeal procedures, which
address organization determinations as defined in §
422.566(b). Upon receiving a complaint, an MA
organization must promptly determine and inform the
enrollee whether the complaint is subject to its
grievance procedures or its appeal procedures.

. . .

(d) Method for filing a grievance.

(1) An enrollee may file a grievance with the
MA organization either orally or in writing.

(2) An enrollee must file a grievance no later
than 60 days after the event or incident that
precipitates the grievance.

(e) Grievance disposition and notification.

    (1) The MA organization must notify the enrollee of its decision as expeditiously as the case requires, based on the enrollee's health status, but no later than 30 days after the date the organization receives the oral or written grievance.

    (2) The MA organization may extend the 30-day timeframe by up to 14 days if the enrollee requests the extension or if the organization justifies a need for additional information and documents how the delay is in the interest of the enrollee. When the MA organization extends the deadline, it must immediately notify the enrollee in writing of the reasons for the delay.

    (3) The MA organization must inform the enrollee of the disposition of the grievance in accordance with the following procedures:

    (i) All grievances submitted in writing must be responded to in writing.

    (ii) Grievances submitted orally may be responded to either orally or in writing, unless the enrollee requests a written response.

    (iii) All grievances related to quality of care, regardless of how the grievance is filed, must be responded to in writing. The response must include a description of the enrollee's right to file a written complaint with the QIO. For any complaint submitted to a QIO, the MA organization must cooperate with the QIO in resolving the complaint.

    . . . .

42 C.F.R. § 422.564. Plaintiff does not argue that these procedures were not followed in his case. Rather, he argues that he is entitled to continue to appeal his claim beyond the MA

organization.  The Court disagrees.  Due process does not require the Secretary to provide never-ending appeals in all cases.  <u>See</u> <u>Goldberg</u>, 397 U.S. 262-63 ("The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss,' [ ], and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication."); <u>see also</u> <u>Cafeteria & Restaurant Workers Union v. McElroy</u>, 367 U.S. 886, 895 (1961)("[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action."); <u>Rubin v. Weinberger</u>, 524, F.2d 497, 500 (7th Cir. 1975)(finding that Medicare Act's foreclosure of judicial review of claims under $1,000 does not violate due process).

The Court finds that as a matter of law the above procedures satisfy due process.   Thus, Count VII will be dismissed without prejudice.

Accordingly, it is now

**ORDERED**:

Defendant's Motion to Dismiss Third Amended Complaint (Doc. #91) is **GRANTED**.  Counts I-VII are dismissed without prejudice.

**DONE AND ORDERED** at Fort Myers, Florida, this ___27th___ day of December, 2011.

JOHN E. STEELE
United States District Judge

Copies: Parties of record